IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, | ) )  Case No. 1:19-cv-01897 |
| Plaintiff, | ) ) ) **CLASS ACTION** |
| v. | ) ) |
| ALLSTATE INSURANCE COMPANY, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

1. Plaintiff Robert Hossfeld ("Hossfeld" or "Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff received an unsolicited, autodialed, prerecorded-voice call in March 2019, asking if he was interested in auto insurance, or bundling with homeowner's or renter's insurance. When Plaintiff indicated that he was interested, he received additional calls from or on behalf of Allstate, as well as quotes for insurance from Allstate, including after asking to not be contacted by phone. All of these calls were made without proper "prior express written consent."

3. Given that these calls and violations are widespread, and that Allstate has been sued multiple times for this same violation, a class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

4. Plaintiff Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue.

5. Defendant Allstate Insurance Company is a Delaware corporation headquartered in Northbrook, Illinois, in this District.

**Jurisdiction & Venue**

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

7. Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member residing in a state different from Defendant.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Allstate is a resident of this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**TCPA Background**

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[,]" and found that "[b]anning such automated or prerecorded telephone calls … is the only effective means of protecting telephone consumers

2

from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, §§ 2(5), 2(14) (1991) (codified at 47 U.S.C. § 227).

10. Some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The statute categorically bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance."). The FCC—charged by Congress to develop the rules and regulations implementing the TCPA, *see* 47 U.S.C. § 227(b)(2)—has further strengthened this prohibition; for autodialed or prerecorded voice telemarketing calls made to cell phones on or after October 16, 2013, prior express *written* consent is required. *See* 47 C.F.R. § 64.1200(a)(2).

11. The TCPA also prohibits initiating any telemarketing call unless the person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d). This includes, inter alia, having a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list, identifying the name of the caller during each call, the name of the person or entity on whose behalf the call was made, and associated phone or address information, and actually honoring do-not-call requests within a reasonable time from the date such request is made. *Id.*

12. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules &*

*Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").

13. The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014)). In May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers ... under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et. al for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

14. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, including as described herein as to Allstate, the seller is properly deemed to have initiated the call through the person or entity that actually placed it.

**Facts**

15. On about March 4, 2019, Plaintiff received a telemarketing call on his cell phone from (254) 604-1507. The call featured a prerecorded voice and was placed using an automatic telephone dialing system.

16. The prerecorded voice said that it was calling to offer auto insurance, as well as homeowner's, renter's, or health insurance, for sale. The prerecorded voice did not ask Plaintiff if he wished to opt out of future calls.

17. During the call, Plaintiff indicated that he was interested in receiving quotes for insurance, and said that insurance companies could call him.

18. Plaintiff gave the caller false identifying information, including the pseudonym Michael Johnson, in case the call was fraudulent, so as not to place himself in peril of potential identity theft.

19. It turns out that the call was not fraudulent: Later that day and over the next several days, Plaintiff received a flurry of telemarketing calls offering Allstate insurance, as well as direct e-mailed quotes for Allstate renter's, auto, and life insurance. Upon information and belief, there were calls before this general timeframe, too.

20. Some or all of these calls, too, were made using an automatic telephone dialing system. Plaintiff recognized the use of an ATDS during these calls because for several of the calls there was a long pause, during which Plaintiff said "hello" several times. Then there was a prerecorded or artificial beep played, and a person came onto the line.

21. On March 5, 2019, Plaintiff received an autodialed call that was transferred to an exclusive Allstate agent, who tried to sell Plaintiff Allstate insurance products. Soon after or during this call, and as a direct result therefrom, Defendant Allstate provided Plaintiff a quote for renter's insurance by email, which linked directly to an Allstate website with an "allstate.com" domain. The quote included an "add-on" option for term life insurance.

22. Also on this March 5, 2019 call, Plaintiff informed Allstate's representative that he would only agree to be contacted by email, and that he did not want any additional contact by telephone.

23. Nonetheless, Allstate continued to cause multiple autodialed calls to be made to Plaintiff's cell phone number thereafter.

24. During one of the Allstate calls with Plaintiff on or about March 6, 2019, the representative informed Plaintiff that the calls were made by a computer, not the representative. On information and belief, this is correct: A human being did not physically dial Plaintiff's phone number to place the calls; rather, the calls to Plaintiff's number were made using a predictive dialer or other computerized dialing system—equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

25. Defendant Allstate has also mailed Plaintiff several letters in relation to the insurance products solicited in relation to nonconsensual automated calls he received on its behalf, including Use of Credit Information Disclosures dated March 2019.

26. Allstate also accessed – or attempted to access – Plaintiff's credit information in connection with the calling and insurance quotes at issue. Indeed, Allstate mailed Plaintiff a letter that informed Plaintiff that "Allstate **will** obtain and use credit information on [him] and any other member(s) of [his] household as part of the insurance credit scoring process."

27. Allstate did not have Plaintiff's "prior express written consent" for any of these calls.

## Allstate's Liability for the Calls at Issue

28. Allstate authorizes its agents to use telemarketing to sell its products and services, and in some cases, Allstate reimburses agents' use of lead generators.

29. Allstate knew the origin of the potential new business when it issued the quotes for insurance it sent to Plaintiff.

30. Alternatively, Allstate reasonably should have known the origin of the potential new business with it issued the quotes.

31. Allstate ratified the illegal telemarketing calls and campaign by attempting to access his credit report and issuing a quotation for insurance to Plaintiff. Allstate has sent multiple follow-up emails to Plaintiff, too; each such email furthers Allstate's ratification of the illegal sales tactics used. Moreover, each time Plaintiff receives another call promoting Allstate goods and services, this too constitutes evidence of ratification.

32. Through its contracts, as well as by other means, Allstate maintains interim control over its agents' actions, both as to lead generation, telemarketing, and other activities. Moreover, Allstate, at all times, has the absolute ability to control its agents' use and method of telemarketing.

33. For example, upon information and belief, Allstate directs the geographical area for which its agents may take credit and earn fees.

34. Furthermore, Allstate had the interim right to instruct each and every one of its agents not to submit applications for insurance that were obtained through telemarketing. In permitting and encouraging its agents to use telemarketing and lead generators to generate business, Allstate places monetary gain over regulatory compliance.

35. In issuing quotes to prospective customers derived therefrom, Allstate ratifies such telemarketing campaigns. Allstate knows that some of the insurance quotations that it issues are generated through autodialed and/or prerecorded calls, but it continues to issue quotes for insurance despite this.

36. Allstate had absolute control over whether, and under what circumstances, they issue an insurance quote to a prospective customer, but has consciously chosen to continue to accept business gained through illegal telemarketing.

37. Allstate had the ability to control its agents' use of Allstate knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

38. Allstate authorizes its insurance agents to use its name during telemarketing calls, and when it issues quotes for insurance like the one it issued to Plaintiff, it makes sure to include its trademark logo "Good Hands" so that the consumer knows the quote came from Allstate.

39. Allstate protects its "Good Hands" logo, and regularly sends out cease and desist letters to third parties that improperly use the logo.

40. Allstate affirmatively authorized the use of the "Good Hands" in the quotations for insurance issued to Plaintiff.

41. Likewise, Allstate and its agents have not instituted procedures for maintaining do-not-call lists. Upon information and belief, Allstate and its agents do not share Do Not Call information amongst themselves and/or their vendors, and do not adequately train their personnel in the existence or use of such. This results in repeated calls to consumers who have asked to not be called by or for Defendant. Additionally, there are many calls—as Plaintiff himself experienced—where Allstate's vendor uses a fictitious name or does not otherwise provide accurate identification information.

42. Allstate has been sued for this type of TCPA violation before, but it has never repudiated the business it gained through illegal telemarketing, and Plaintiff is not aware of Allstate ever having disciplined any agent or telemarketer for engaging in conduct such as described herein. Money damages *plus* an injunction against future violations are the only way to wrench Allstate to comply with the TCPA.

**Class Action Allegations**

43. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class consisting of:

> All persons in the United States (i) to whom a call was made for the purpose of encouraging the purchase of Allstate goods or services (ii) to a cellular telephone number, (iii) using a prerecorded voice or the same or similar telephone dialing system as was used in the calls to Plaintiff, where (iv) Allstate did not have a signed writing authorizing autodialed and prerecorded telemarketing calls from Allstate, at the time such calls were made.

44. Upon information and belief, the cellular telephone numbers of more than 100 persons were called for the purpose of encouraging the purchase of Allstate insurance in the four years prior to the filing of this action, using a prerecorded voice or the same or similar telephone dialing system used in the Allstate calls to Plaintiff.

45. Common questions of law or fact exist as to all members of the Class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the Class include but are not limited to:

   a. Whether the calls at issue used an "automatic telephone dialing system" or an "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

   b. Whether the calls complied with the TCPA's prerecorded voice requirements, including 47 C.F.R. § 64.1200(b).

   c. Whether Allstate had "prior express written consent" to contact Plaintiff and the other members of the Class when causing calls to be made to such persons' cell phones using an automatic telephone dialing system or an artificial or prerecorded voice, pursuant to 47 C.F.R. § 64.1200(f)(8);

   d. Whether Allstate should be liable for sales calls made by third parties; and

   e. Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the other members of the Class are entitled to trebled damages under 47 U.S.C. § 227(b)(3).

46. Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Class are the same: Defendant violated the TCPA by causing the cellular telephone number of each member of the Class, including Plaintiff, to be called using an automatic telephone dialing system and/or an artificial or prerecorded voice, without the requisite permission.

47. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

48. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

49. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

50. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making relief appropriate with respect to the Class

as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

51. The identity of the Class is, on information and belief, readily identifiable from Defendant's and its vendors' records.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
**(Autodialed and/or Artificial or Prerecorded Voice Call Violations)**

52. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

54. Defendant initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the class defined above using an automatic telephone dialing system or an artificial or prerecorded voice.

55. These calls were made without regard to whether or not Defendant had previously obtained express consent or permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the class when the calls were made.

56. The prerecorded message calls Plaintiff and others received that were connected to Allstate did not properly permit opt-out of future calls, pursuant to 47 C.F.R. § 64.1200(b).

57. Defendant's calls and violations were negligent. Alternatively, they were willful or knowing.

58. Defendant violated the TCPA by making non-emergency calls to the cell phones of Plaintiff and others using an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent.

59. On information and belief, some of the calls to Plaintiff and the class were made by vendors of Defendant. Defendant is liable for those calls, too.

60. As a result of Defendant's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

61. Because Defendant knew or should have known that Plaintiff and the other members of the class had not given prior express consent to receive its automated calls to their cell phones—and/or willfully caused such calls to be made to the cell phones of Plaintiff and the other members of the class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court enter judgment against Defendant for:

    A. Certification of the class as alleged herein;

    B. A declaration that Defendant violated the TCPA as to Plaintiff and the class;

    C. An injunction to prevent further violations;

    D. Damages pursuant to 47 U.S.C. § 227(b)(3), as applicable;

  E.  Costs, expenses, and attorneys' fees, to the extent permitted by law; and

  F.  Such other or further relief as the Court deems just and proper.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

62. Plaintiff re-alleges and incorporates all foregoing allegations.

63. The Internal Do-Not-Call provisions of the TCPA require any party that is engaged in telemarketing – including "sellers" who do not make calls themselves – to maintain and honor a written internal do-not-call policy.

64. The TCPA's protections on this point are strong, and reflect the FCC's mandate of informed consumer choice: The Internal Do-Not-Call provisions prohibit <u>any</u> telemarketing at all, unless the seller adheres to the provisions of 47 C.F.R. § 64.1200(d).

65. Allstate violated 47 C.F.R. § 64.1200(d), by not having sufficient internal DNC policies and/or by not following or honoring the policies that they did have.

66. For example, but not by limitation, Allstate's DNC policy does not properly require telemarketing vendors to disclose that calls are being made on behalf of Allstate. 47 C.F.R. § 64.1200(d)(4).

67. Additionally, but not by limitation, Allstate has not instituted a sufficient policy to integrate do not call requests made to lead generators that make calls on its behalf, into its own Internal Do-Not-Call list.

68. As a result of Allstate's Internal Do-Not-Call violations, Plaintiff and the class were damaged. For example, they received unsolicited telemarketing calls that invaded their privacy, including, as in Plaintiff's case, within a 12-month period after a do-not-call request.

13

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the class;

C. An injunction to prevent further violations;

D. Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: March 19, 2019

Respectfully submitted,

ROBERT HOSSFELD, individually and on behalf of others similarly situated,

By: */s/ Alexander H. Burke*

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288

Scott D. Owens (pending *pro hac vice* admission)
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588

*Counsel for Plaintiff and Putative Class*